J-A02029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RICHARD HINES | |
| Appellant | No. 643 EDA 2014 |

Appeal from the Judgment of Sentence of January 30, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No.: CP-23-CR-00030678-2013

BEFORE:  PANELLA, J., LAZARUS, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED MARCH 17, 2015**

Richard Hines appeals his January 30, 2014 judgment of sentence. We affirm.

The trial court summarized the history of the case as follows:

The incident in question took place on August 4, 2012, on Golf Road in Upper Darby, Pennsylvania[,] at approximately 11:00 pm.  The victim, Soryba Tounkara, was on his way to visit a friend who lived at 28 Golf Road in Upper Darby.  While walking down the street, he noticed a group of individuals, approximately ten in total, sitting on the steps of a neighboring home[, 16 Golf Road].  Upon passing the group, the victim heard one of the individuals say something, but as he turned around to identify the source of the voice, the group surrounded him.  After the group surrounded Tournkara, a female member of the group punched him in the face.  As Tounkara fell to the ground, the rest of the group began beating him.  His phone and laptop were stolen, and his wallet was also missing following the altercation. Tounkara then retrieved a knife from his friend's home, and returned to the scene, startling the group and causing them to flee on foot and disperse throughout the neighborhood. Tounkara sustained several injuries from the altercation,

including an injury to his right hand, which caused permanent damage to a finger.

Detective Thomas Thompson of the Upper Darby Police Department then received a call for a man with a knife drawn in the area. Upon answering the dispatch, Detective Thompson discovered Tounkara, who looked "disheveled," as if he had just been in a fight. At this point, Tounkara could not identify by name any of the members of the group that attacked him. However, he later observed a juvenile at the scene of the crime and recognized him as one of the members of the group that allegedly assaulted and robbed him. At the police station, Detective Raymond Blohm of the Upper Darby Police Department prepared a photo array, where, in addition to the juvenile, Tounkara identified [Hines] as one of the members of the group.

The first witness for [Hines] was Dontaya Hines, [Hines' sister]. According to her testimony, [Hines] did not have one primary residence, but instead stayed at several different locations for varying lengths of time over the course of the year. Ms. Hines went on to remark that, although her home [at 14 Golf Road] is [Hines'] "technical residence," he only stays overnight in the house between three and four nights a year. Ms. Hines had already seen [Hines] at her home earlier that morning, but had not seen him for the rest of the day. Around midnight, [Hines] returned to Ms. Hines' residence. Upon returning, [Hines] mentioned hearing a warning from a neighbor of an assault and theft taking place on their street earlier that evening. Ms. Hines remarked that such a warning seemed ridiculous since, to the best of her knowledge, [Hines] was not in the area at the time. The remaining witnesses for the [d]efense spoke to [Hines'] general character and reputation as a law-abiding citizen, but no further substantive evidence was offered at that time.

Trial Court Opinion ("T.C.O."), 8/6/2014, at 1-3 (citations to notes of testimony and footnotes omitted).

On December 17, 2013, after a non-jury trial, the trial court found Hines guilty of theft by unlawful taking, simple assault, and two counts of

conspiracy related to the other charges.[1] On January 30, 2014, he was sentenced to one month to one year of incarceration on the theft and assault charges, with the charges to run concurrently. Hines was given credit for time on electronic home monitoring and was immediately paroled. Hines was sentenced to one year of probation on the conspiracy charges to run consecutively to the period of incarceration. He was also ordered to pay restitution in the amount of $1,692.84 to Mr. Tounkara.

On February 26, 2014, Hines timely filed a notice of appeal. The trial court ordered, and Hines timely filed, a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Hines raises two issues for our review:

1. Whether the evidence was sufficient to sustain a guilty verdict as to each of the offenses charged: simple assault, theft, and conspiracy (the conspiracy as being to the underlying simple assault and theft). (The bases of the conviction on the underlying offenses would have been one of accomplice liability.)

2. Whether the evidence was sufficient to sustain a guilty verdict based upon identification of [Hines].

Hines' Brief at 5 (footnote omitted).

For sufficiency challenges, our standard of review is well-settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the

---

[1]    18 Pa.C.S.A. §§ 3921(a); 2701(a)(1); and 903, respectively.

crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Thompson*, 106 A.3d 742, 756 (Pa. Super. 2014) (emphasis omitted).

Although initially Hines appears to challenge the sufficiency of the evidence as to all four of his convictions, he does not present an argument specifically addressing conspiracy. Hines' Brief at 9-11. Thus, we will not review the evidence related to that charge.[2] Hines was convicted of assault and theft upon the basis of accomplice liability.

Accomplice liability is defined as follows:

An accomplice is one who knowingly and voluntarily cooperates with or aids another in the commission of a crime. *See* 18 Pa.C.S. § 306. To be an accomplice, one must be an active

---

[2] To the extent that Hines intended to challenge the sufficiency of the evidence for his convictions for conspiracy, we would find the challenge waived. In his concise statement, Hines only raised the sufficiency as it relates to accomplice liability. Any issues not raised in a concise statement are waived. *See* Pa.R.A.P. 1925(b)(4)(vii).

> partner in the intent to commit [the crime]. An [accomplice] must have done something to participate in the venture. [A] showing of mere presence at the scene of a crime is insufficient to support a conviction: evidence indicating participation in the crime is required. Even presence at the scene of a crime in the company of its perpetrator has been held to be insufficient to sustain a conviction.

*Commonwealth v. Manchas*, 633 A.2d 618, 627-28 (Pa. Super. 1993)

(citations and quotation marks omitted).

> "Only 'the least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice.' No agreement is required, only aid." *Commonwealth v. Kimbrough*, 872 A.2d 1244, 1251 (Pa. Super. 2005) (citations omitted).
>
>> To establish complicity, mere presence at the scene of a crime and knowledge of the commission of criminal acts is not sufficient. Nor is flight from the scene of a crime, without more, enough. However, those factors combined, along with other direct or circumstantial evidence may provide a sufficient basis for a conviction, provided the conviction is predicated upon more than mere suspicion or conjecture.
>>
>> *Commonwealth v. Rosetti*, 469 A.2d 1121, 1123 (Pa. Super. 1983) (citations omitted).

*Commonwealth v. Knox*, 50 A.3d 732, 739 (Pa. Super. 2012) (citations

modified).

Accomplice liability may be established wholly by circumstantial

evidence. *Id.* at 739. However,

> a defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. *See Commonwealth v. Wagaman*, 627 A.2d 735, 740 (Pa. Super. 1993). There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so. *See id.* With regard

to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime.

***Commonwealth v. Murphy***, 844 A.2d 1228, 1234 (Pa. 2004) (citations modified).

Hines argues that the Commonwealth only proved that he was present at the scene of the crime and that mere presence is not sufficient to prove that he was an accomplice. Hines contends that Mr. Tounkara did not testify that Hines hit or kicked Mr. Tounkara. Because the Commonwealth could not prove that he actually participated in the attack, Hines asserts that the Commonwealth failed to meet its burden. Hines' Brief at 9-11.

The trial court found that Mr. Tounkara's testimony established that Hines was part of the group that assaulted and robbed him. In addition, the trial court credited testimony that placed Hines next door to the scene of the crime that day, which bolstered the credibility of Mr. Tounkara's identification. The trial court concluded that this testimony, when viewed in the light most favorable to the Commonwealth, was sufficient to prove that Hines aided or attempted to aid the group in the commission of the crime. T.C.O. at 4-5.

Mr. Tounkara testified that, as he walked along Golf Road, he saw a group of men and one woman sitting on the step outside one of the houses. Notes of Testimony ("N.T."), 12/17/2013, at 17. As he passed the group, Mr. Tounkara heard someone speak to him. He turned to see who was speaking and the group of people surrounded him. ***Id.*** at 18. Mr. Tounkara

testified that the woman punched him in the face and he fell to the ground. Then, the members of the group started kicking him. Mr. Tounkara's right hand was permanently injured. *Id.* at 19-20. The group took his laptop computer and cell phone. *Id.* at 20-21. Mr. Tounkara's wallet was also missing. *Id.* at 22.

From a photo array, Mr. Tounkara identified Hines as one of the group. *Id.* at 32. Mr. Tounkara admitted that he did not see Hines hit or kick him, but maintained that Hines was part of the group that surrounded him. *Id.* at 33. Detective Raymond Blohm testified that he showed Mr. Tounkara approximately ten photo arrays during the course of the investigation. Mr. Tounkara made two identifications on two different arrays: Hines and a juvenile.[3] *Id.* at 48.

Ms. Hines testified that she saw her brother on the morning of the incident. That evening, she went out to smoke and saw a group of people next door, but did not see her brother with them. *Id.* at 69. Ms. Hines testified that her brother returned to the house around midnight. *Id.* at 73.

Ms. Hines confirmed that she heard a commotion outside her house around 10:30 p.m. and she saw a group of eight to ten people, mostly men, on the sidewalk outside 16 Golf Road. *Id.* at 87. When Hines returned

---

[3] A third person was arrested after it was determined that the person had Mr. Tounkara's cell phone. *Id.* at 51-52.

home, he told Ms. Hines that a neighbor told him that a man's laptop and cell phone had been stolen that night after a fight. *Id.* at 88-90.

Viewing the evidence in the light most favorable to the Commonwealth as we must, the evidence established that Hines was part of the group that surrounded, assaulted, and robbed Mr. Tounkara. While Mr. Tounkara could not state with certainty that Hines personally struck or robbed him, Hines was part of the group that, acting in concert, surrounded Mr. Tounkara, which aided and assisted the assault and theft. The group's collective actions allowed the crimes to occur. Hines was identified as part of this group. Consequently, the fact-finder had ample basis to conclude that Hines was more than merely present. Further, Ms. Hines' testimony provided circumstantial evidence that Hines was present around the time of the crime. Taken together, the evidence was sufficient to establish his liability as an accomplice.

In his second issue, Hines argues that Mr. Tounkara's identification was not credible based upon Mr. Tounkara's limited ability to observe the group members and Detective Blohm's flawed presentation of the photo array. Hines' Brief at 11-12. This issue is waived. Hines did not include the identification as one of the issues that he raised in his concise statement. Failure to include an issue in the concise statement results in waiver. *See* Pa.R.A.P. 1925(b)(4)(vii); *Commonwealth v. Salamone*, 897 A.2d 1209, 1217 (Pa. Super. 2006) ("Failure to raise an issue in a court-ordered 1925(b) statement results in waiver of that issue.").

To the extent that Hines intended the challenge to the identification to be a challenge to the weight of the evidence, Hines also failed to preserve the issue. While it was in his concise statement, a weight of the evidence challenge must be preserved through a post-sentence motion. ***See Commonwealth v. Lofton***, 57 A.3d 1270, 1273 (Pa. Super. 2012) ("[A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing." (citing Pa.R.Crim.P. 607)). Hines did not file a written post-sentence motion.[4] Our review of the sentencing transcript indicates that Hines did not make an oral motion at that time. Therefore, Hines has not preserved any challenge to the weight of the evidence and the issue is waived.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/17/2015

---

[4] While Hines was ordered to file a sentencing memorandum with a recommendation as to an appropriate penalty, N.T., 12/17/2013, at 127, the memorandum is not part of the certified record. Further, from the trial court's description, the memorandum only suggested a sentence and listed a potential witness. N.T., 1/30/2014, at 9.